**United States Court of Appeals**
**For the Ninth Circuit**

| | |
|---|---|
| Ai-Yee Liu,<br>*Petitioner-Appellant*,<br><br>v.<br><br>Kristi Noem, Secretary, U.S. Department of Homeland Security, *et al*<br><br>*Defendants-Appellees*. | **Case No.: 26-1** |

# PETITIONER-APPELLANT'S MOTION FOR A STAY OF REMOVAL

Petitioner-Appellant Ai-Yee Liu, by and through undersigned counsel, hereby respectfully moves this Court for an emergency stay of removal pending resolution of her appeal. Ms. Liu is currently detained at the Florence Service Processing Center in Florence, Arizona, and faces imminent removal to China. Her removal could occur at any time, as no injunction currently prevents the government from executing the nearly thirty-year-old exclusion order under which she is held.

The District Court summarily dismissed Ms. Liu's habeas petition and denied her motion for a temporary restraining order on December 19, 2025, before the government even filed an appearance, let alone an opposition. This procedural irregularity, combined with the substantial merits of Ms. Liu's claims and the catastrophic and irreparable harm she will suffer if removed, compels the granting of this motion.

For the reasons set forth below, Petitioner satisfies all criteria for a stay: she has demonstrated a strong likelihood of success on the merits, she faces irreparable harm if removed, Respondents face negligible harm if this motion is granted, and the public interest favors a stay. Accordingly, this Court should grant Petitioner an emergency stay of removal during the pendency of this appeal.

## STATEMENT OF FACTS

### *A. Immigration History*

Petitioner Ai-Yee Liu is a 47-year-old native and citizen of the People's Republic of China. On January 14, 1995, when she was approximately seventeen years old, Ms. Liu arrived in the United States at John F. Kennedy International Airport. Upon arrival, she was

inspected by immigration officials and placed into exclusion proceedings as an arriving alien.

On March 7, 1995, Ms. Liu filed an application for asylum based on persecution for her Christian religious beliefs in China. Immigration Judge Jeffry S. Chase denied her asylum application and ordered her excluded on March 29, 1995. She appealed to the Board of Immigration Appeals, which dismissed her appeal on November 3, 1995, rendering the exclusion order administratively final. The exclusion order has never been executed. Ms. Liu has remained in the United States continuously since January 14, 1995.

On November 1, 2005, Ms. Liu filed a Motion to Reopen with the BIA based on changed personal circumstances, specifically the birth of her United States citizen children and fear of persecution under China's coercive population control policies. The BIA denied the Motion to Reopen as untimely filed. Ms. Liu sought review of the BIA's denial in the United States Court of Appeals for the Second Circuit, which denied the Petition for Review on September 28, 2007.

### *B. Family and Community Ties*

On July 29, 1999, Ms. Liu married Shan Chun Chen in New York. The couple subsequently had three children, all of whom were born in the United States and are United States citizens by birth: Angela Chen, age 21; Annie Chen, age 20; and Benson Chen, age 19. Ms. Liu has been the primary caregiver for her children throughout their lives. She raised them in Great Neck, New York, where the family has resided for decades.

Ms. Liu has maintained stable employment throughout her nearly thirty years in the United States, has consistently paid federal, state, and local taxes, and has never received public benefits such as food stamps or welfare. She has no criminal history of any kind. She has never been arrested, charged with, or convicted of any crime.

### *C. The I-130 and I-485 Applications*

On July 22, 2025, Angela Chen, as an adult United States citizen over the age of twenty-one, filed Form I-130, Petition for Alien Relative, on behalf of her mother under the immediate relative category. Concurrently, Ms. Liu filed Form I-485, Application to Register Permanent Residence or Adjust Status.

On December 2, 2025, USCIS approved the I-130 petition filed by Angela Chen on behalf of Ms. Liu. As the beneficiary of an approved immediate relative petition, Ms. Liu had an immigrant visa immediately available to her, and she was eligible to apply for adjustment of status.

### *D. The December 2, 2025 Interview, Detention, and Denial*

USCIS scheduled Ms. Liu's adjustment of status interview for December 2, 2025, at the USCIS Long Island Field Office. Ms. Liu appeared for the interview accompanied by her daughter Angela Chen and her attorney. The interview lasted approximately 25 to 30 minutes. The USCIS interviewing officer focused almost exclusively on negative factors, specifically Ms. Liu's unlawful presence in the United States and her failure to depart after the 1995 exclusion order. When Ms. Liu's attorney attempted to raise favorable evidence, specifically that Ms. Liu had consistently paid taxes throughout her time in the United States, the officer dismissed this evidence, noting that Ms. Liu had been living "illegally" in the United States.

At the conclusion of the interview, as the officer was making copies of documents, there was a knock on the interview room door. ICE agents entered the room, displayed their badges, and stated that Ms. Liu

had an outstanding removal order and they were taking her into custody. Ms. Liu was transported from New York to the Florence Service Processing Center in Florence, Arizona, where she has been detained since December 2, 2025.

On December 17, 2025, USCIS issued a decision denying Ms. Liu's I-485 Application for Adjustment of Status. Critically, USCIS found that Ms. Liu was eligible for adjustment of status but exercised negative discretion. The denial treated Ms. Liu's family relationships as "after-acquired equities" entitled to "diminished weight" because they were established while she was subject to a final order of exclusion, citing *Matter of Correa*, 19 I&N Dec. 130 (BIA 1984).

### *E. Prior Proceedings*

On December 11, 2025, counsel filed a Verified Complaint for Mandamus in the United States District Court for the Eastern District of New York seeking to compel USCIS to adjudicate Ms. Liu's then-pending I-485 application. On December 15, 2025, Judge Sanket J. Bulsara granted a temporary restraining order enjoining Petitioner's removal. That TRO expired on December 19, 2025, at 5:00 p.m. Pacific

Time after USCIS mooted the mandamus by issuing its December 17, 2025 denial.

On December 19, 2025, Ms. Liu filed a Petition for Writ of Habeas Corpus and Emergency Motion for Temporary Restraining Order in the District of Arizona. On the same day, before the government filed any appearance or opposition, the District Court summarily dismissed the Petition and denied the Emergency Motion. On January 2, 2026, Ms. Liu timely filed a Notice of Appeal to this Court.

## LEGAL STANDARDS

The Supreme Court has affirmed that Circuit Courts should apply the traditional stay factors in reviewing motions for stays of removal. *Nken v. Holder*, 556 U.S. 418 (2009). These traditional factors require a four-part balancing test: (1) whether there is a likelihood of success on the merits; (2) whether irreparable harm would occur if a stay is not granted; (3) whether the potential harm to the petitioner outweighs the harm to the government if a stay is not granted; and (4) whether granting of the stay would serve the public interest.

# ARGUMENT

## POINT ONE: THERE IS A STRONG LIKELIHOOD OF SUCCESS ON THE MERITS OF THIS APPEAL

Petitioner has demonstrated a strong likelihood of success on the merits of her appeal. The District Court committed multiple reversible errors that independently warrant reversal and remand.

### A. The District Court Erred by Summarily Dismissing the Petition Before the Government Responded

The District Court's most glaring error was its decision to summarily dismiss Ms. Liu's habeas petition before the government even filed an appearance, let alone an opposition. Ms. Liu filed her Petition and Emergency Motion on December 19, 2025. That same day, without waiting for any response from the government, the District Court dismissed the Petition in its entirety.

While Rule 4 of the Rules Governing Section 2254 Cases authorizes summary dismissal where "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief," this authority must be exercised with restraint, particularly in cases involving novel legal questions or complex factual circumstances. The Ninth Circuit has cautioned that summary dismissal is appropriate only where

the petition is "clearly" not cognizable. Clayton v. Biter, 868 F.3d 840, 845 (9th Cir. 2017).

Ms. Liu's claims are far from frivolous. She raised substantial claims under the Administrative Procedure Act, the Fifth Amendment's Due Process Clause, and the statutory framework governing detention. The District Court's decision to dismiss these claims without affording the government an opportunity to respond and without affording Ms. Liu an opportunity for reply deprived the court of the adversarial testing that is essential to sound judicial decision-making.

This procedural irregularity is particularly troubling given the life-altering consequences of the District Court's decision. Ms. Liu faces permanent separation from her three United States citizen children and removal to a country she left as a minor nearly thirty years ago. The gravity of these consequences demands careful deliberation, not hasty dismissal.

### B. The I-485 Denial Was Arbitrary and Capricious

The Administrative Procedure Act requires courts to "hold unlawful and set aside agency action, findings, and conclusions found to

be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). USCIS's denial of Ms. Liu's I-485 application was arbitrary and capricious because the agency: (a) mislabeled eligibility factors as adverse discretionary factors; (b) failed to consider all relevant favorable factors; (c) engaged in internally inconsistent reasoning; (d) failed to articulate a rational explanation for its decision; and (e) included legally incoherent boilerplate language demonstrating a lack of individualized consideration.

*(1) Mislabeling of Eligibility Factors as Adverse Discretionary Factors.*

In *You, Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451, 467 (S.D.N.Y. 2018), the court addressed USCIS's mislabeling of eligibility factors as adverse discretionary factors. The court explained that "USCIS labeled several factors as 'adverse' in contravention of the statutory scheme that Congress created for alien relatives of U.S. citizens." The Court held that "[l]abeling these facts as 'adverse' would not only collapse the eligibility and discretionary stages of the adjustment of status process, but also render the reasons an alien must seek relief the same reasons he is barred from relief. Surely, Congress did not intend these results." *Id.* The Court

found that "USCIS's mislabeling of eligibility factors as 'adverse' factors at the discretionary stage are inconsistent with the text, structure, and history of the INA's statutory scheme for adjustment of status." *Id.*

Here, USCIS's denial similarly mislabels eligibility factors as adverse discretionary factors. The denial treats Ms. Liu's entry without inspection, her failure to depart after the exclusion order, and her unlawful presence as "adverse" discretionary factors. But these are the very circumstances that make an applicant eligible for adjustment under Section 1255 in the first place. They cannot simultaneously serve as the basis for a discretionary denial, or the adjustment of status remedy would be rendered meaningless for the class of aliens Congress intended to benefit.

Moreover, if USCIS may treat continued presence in the United States after an exclusion order as a negative discretionary factor, that factor would apply categorically to every single adjustment applicant with an exclusion order. Logically, every individual who seeks adjustment of status while subject to an exclusion order must be physically present in the United States. That is the very nature of an exclusion order: the individual entered the country but was ordered

excluded. If such an individual were not in the United States, she would have no need to seek adjustment of status. Physical presence in the United States after an exclusion order is therefore not merely a common characteristic of adjustment applicants with exclusion orders; it is a definitional prerequisite. The agency would have created a discretionary ground for denial that applies universally to a class of applicants whom Congress has determined are eligible to seek adjustment. This would transform Congress's permissive scheme into a categorical bar through the guise of discretion.

*(2) Failure to Consider All Relevant Factors.*

An agency acts arbitrarily and abuses its discretion if it fails to consider important aspects of the case or relevant factors in the record. In *Hassan v. INS*, 927 F.2d 465, 467 (9th Cir. 1991), the Ninth Circuit held that the Board abuses its discretion if it fails to "'show proper consideration of all factors when weighing equities and denying relief.'" (quoting *Mattis v. INS*, 774 F.2d 965, 968 (9th Cir. 1985)).

The denial notice mentions only two favorable factors: Ms. Liu's three United States citizen children and her lack of contact with law enforcement. But the record contains substantial additional favorable

evidence that USCIS failed to address: nearly thirty years of continuous residence in the United States; consistent payment of taxes throughout her time in the United States; no receipt of public benefits; stable employment history; strong family and community ties; and sole caregiver for three children who are now young adults. By ignoring or downplaying these important positive equities, USCIS failed to consider the entire totality of circumstances. *See Arrington v. Daniels*, 516 F.3d 1106, 1112-13 (9th Cir. 2008).

*(3) Failure to Articulate a Rational Explanation.*

Under foundational administrative law principles, an agency must "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The Ninth Circuit applies this standard strictly: agency action is lawful "only if it rests on a consideration of the relevant factors" and if the agency's reasoning demonstrates that the facts and evidence were fairly assessed in reaching the decision. *See Arrington v. Daniels*, 516 F.3d 1106, 1112-13 (9th Cir. 2008).

Here, USCIS's denial letter failed to articulate why the acknowledged positive factors in Ms. Liu's case were outweighed by the negatives, nor did it provide a reasoned explanation reconciling its inconsistent treatment of her equities. There is no clear, rational narrative in the denial explaining how USCIS balanced nearly three decades of equities against the single adverse factor of a long-ago exclusion order. An agency's bare conclusion, without a "satisfactory explanation" tying the facts to the outcome, is arbitrary and capricious.

*(4) The "33 Days to Voluntarily Depart" Language Is Legally Incoherent.*

The December 17, 2025 denial letter concludes with language advising Ms. Liu that she has "33 days to voluntarily depart the United States" or "removal proceedings may be initiated." This language is legally nonsensical given the procedural posture of Ms. Liu's case and demonstrates that the denial was not the product of reasoned decision-making.

First, Ms. Liu is already subject to a final exclusion order from 1995. There are no "removal proceedings" to be "initiated." Her removal

proceedings concluded thirty years ago. The government cannot threaten to commence proceedings that have already concluded.

Second, the notion that Ms. Liu has "33 days to voluntarily depart" is irreconcilable with the government's simultaneous actions. On the same day the denial was issued, ICE detained Ms. Liu at the Florence Service Processing Center and scheduled her for imminent removal. The government cannot coherently advise an applicant to "voluntarily depart within 33 days" while simultaneously detaining her and preparing to forcibly remove her within days.

Third, the "33 days" language appears to be boilerplate from a standard denial form that has no application to Ms. Liu's circumstances. The inclusion of inapplicable boilerplate in a discretionary denial suggests that USCIS did not engage in individualized, reasoned decision-making. The District Court for the Eastern District of New York took note of this incoherent language in its December 18, 2025 Order extending the temporary restraining order, observing the tension between USCIS advising Ms. Liu she has 33 days to depart while ICE simultaneously detains her for imminent removal. This contradiction

further demonstrates that the denial was arbitrary and not the product of reasoned agency decision-making.

**C. The Denial Violated Due Process**

The Fifth Amendment's Due Process Clause requires that agency adjudications be fundamentally fair. The Ninth Circuit has recognized that USCIS benefit adjudications can trigger Fifth Amendment procedural protections and must satisfy the *Mathews v. Eldridge* balancing test when the adjudication turns on contested facts. *See Ching v. Mayorkas*, 725 F.3d 1149 (9th Cir. 2013) (holding plaintiffs had a protected interest in USCIS I-130 adjudication and that additional process was required under *Mathews*). The circumstances of Ms. Liu's interview and the subsequent denial raise serious due process concerns on multiple independent grounds.

*(1) Prejudgment and Lack of Neutral Adjudicator*

The USCIS interviewing officer demonstrated prejudgment by focusing almost exclusively on negative factors and refusing to consider or give weight to favorable evidence. The officer's dismissal of Ms. Liu's tax payment history and failure to inquire about any positive factors suggests the outcome was predetermined. The Ninth Circuit has held that

due process is violated where the adjudicator's conduct shows hostility or prejudgment and undermines the fairness of the proceeding. *See Reyes-Melendez v. INS*, 342 F.3d 1001 (9th Cir. 2003). As the Ninth Circuit emphasized in *Sanchez-Cruz v. INS*, 255 F.3d 775, 780 (9th Cir. 2001), neutrality is among the most basic due process protections in immigration adjudications.

*(2) Coordination with ICE / Use of Interview as Detention Trap*

ICE officers were waiting outside the interview room to detain Ms. Liu immediately upon the conclusion of the interview. The coordination between USCIS and ICE, combined with the officer's singular focus on negative factors, suggests that the interview was not conducted in good faith as a genuine adjudication but rather as a pretext to effectuate detention.

The use of the adjustment-of-status process as a bait-and-switch mechanism for detention has been recognized as legally problematic by courts across the country. In *You, Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451 (S.D.N.Y. 2018), Judge Torres confronted a factually analogous situation in which the petitioner appeared for his I-485 adjustment interview, was questioned about his relationship with his U.S. citizen

spouse, and was then arrested by ICE officers before being questioned on his adjustment petition. *Id.* at 455. The Court squarely rejected the government's argument that it could deploy the adjustment process to facilitate detention. As Judge Torres explained: "By inviting Petitioner to interview for his green card and arresting him at his interview appointment, Respondents deployed § 1255 to effectuate the opposite of its intended outcome for aliens like Petitioner. Respondents used the adjustment of status scheme as a sword when it was intended to be used as a shield." *Id.* at 466.

Judge Torres further observed that "Congress did not intend its carefully considered adjustment of status process for a select group of aliens to become a mechanism for 'gotcha' law enforcement." *Id.* Referring to such coordinated tactics between USCIS and ICE, the Court held: "These type of bait-and-switch tactics are not only a perversion of the statute, but also likely offensive to 'the concept of ordered liberty.'" *Id.* (quoting *Rochin v. California*, 342 U.S. 165, 169 (1952)).

In *Calderon v. Sessions*, 330 F. Supp. 3d 944 (S.D.N.Y. 2018), Judge Crotty similarly condemned the government's attempt to remove an undocumented immigrant who was in the midst of pursuing

adjustment of status through his U.S. citizen spouse. The Court found that "by detaining and attempting to execute Petitioner's order of removal, Respondents have attempted to strip the Petitioner's right to engage in an immigration process made available to him. Yet Respondents have provided no explanation or justification." *Id.* at 958. Judge Crotty emphasized that the government's conduct violated both the APA and the Due Process Clause: "Respondents show no concern for the rights of aliens that they themselves created. This unchecked exercise of power is exactly what the APA is designed to protect against." *Id.*

In *De Jesus Martinez v. Nielsen*, 341 F. Supp. 3d 400 (D.N.J. 2018), the Court confronted another instance where ICE agents entered the interview room and arrested the petitioner at the conclusion of his I-130 interview. The Court characterized the government's conduct as "exactly the arbitrary and capricious behavior our laws intend to prevent." *Id.* at 410. The *Martinez* Court further held that "Respondent-Defendants' attempt to deport Mr. Martinez by arresting him during his I-130 interview constitutes a disregard for the rights that they, on behalf of DHS, created. To attempt to remove Mr. Martinez while he was availing himself of the provisional waiver process is 'arbitrary,

capricious, an abuse of discretion, [and] not in accordance with law.'" *Id.* (quoting 5 U.S.C. § 706).

In *Lin v. Nielsen*, 377 F. Supp. 3d 556 (D. Md. 2019), the District of Maryland found that "Defendants effectively used the I-130 interview to lure Lin to his arrest, preventing him from completing the provisional waiver process. Defendants have thus taken a rule that was promulgated for one purpose and used it for the opposite purpose." *Id.* at 564. The *Lin* Court held that "[t]o allow removal under these circumstances would permit the government to erect an impenetrable barrier to completion of the provisional waiver process and, indeed, to use it as a trap for unsuspecting applicants." *Id.* at 565.

In *Sanchez v. McAleenan*, 2020 WL 1911547 (D. Md. 2020), the same court applied *Lin* to a putative class of similarly situated individuals. The Court found that "Respondents effectively used the I-130 interview to lure Petitioners...to their arrests, preventing them from completing the provisional waiver process." *Id.* The Court held that "[t]his is precisely the type of arbitrary and capricious behavior the APA is designed to prevent." *Id.*

In *Jimenez v. Nielsen*, 334 F. Supp. 3d 370 (D. Mass. 2018), Judge Wolf denied the government's motion to dismiss claims brought by multiple petitioners who had been arrested at or deterred from attending their USCIS interviews. The Court found that "petitioners allege with adequate specificity a 'pattern' of arrests at the CIS offices, indicating that ICE has been 'systematically targeting' for arrest, detention, and removal individuals who were applying for provisional waivers or launching that process at their I-130 interviews." *Id.* at 389-90.

Ms. Liu's case presents facts indistinguishable from those condemned in *You*, *Calderon*, *Martinez*, *Lin*, *Sanchez*, and *Jimenez*. She appeared for her I-485 interview in good faith, represented by counsel, prepared to demonstrate her eligibility for adjustment of status. She was never asked about positive equities or given an opportunity to present favorable evidence. ICE officers were waiting outside the interview room and detained her immediately upon its conclusion. The denial was issued after this lawsuit was filed and one day before oral argument on the motion to stay removal.

*(2) Failure to Provide Meaningful Opportunity to Present and Rebut Evidence*

Due process requires a full and fair hearing and a reasonable opportunity to present evidence. *See Colmenar v. INS*, 210 F.3d 967 (9th Cir. 2000). Moreover, USCIS regulations require the agency to advise applicants of derogatory information unknown to them and provide an opportunity to rebut before an adverse decision. 8 C.F.R. § 103.2(b)(16)(i). In *Ilyabaev v. Kane*, 847 F. Supp. 2d 1168 (D. Ariz. 2012), the court held that USCIS violated due process and its own regulation by failing to follow this notice-and-rebuttal requirement.

Here, Ms. Liu was not given a meaningful opportunity to address the negative factors the agency relied upon or to present evidence in rebuttal. The interviewing officer focused exclusively on negative factors, refused to engage with favorable evidence when counsel attempted to present it, and rendered an outcome that appeared predetermined. This denial of meaningful participation violates the fundamental due process requirement that a party be allowed to rebut agency evidence. *See Zerezghi v. USCIS*, 955 F.3d 802 (9th Cir. 2020) (due process violated where agency relied on undisclosed evidence

without meaningful chance to rebut); *Kaur v. Holder*, 561 F.3d 957 (9th Cir. 2009) (use of evidence without adequate opportunity for meaningful rebuttal is fundamentally unfair and violates due process).

*(3) The Denial Was Pretextual*

Moreover, the denial was not the product of reasoned decision-making but was instead a litigation tactic designed to moot this Court's jurisdiction. The timing of the denial, issued after the filing of the Eastern District lawsuit and one day before oral argument, combined with the coordination between USCIS and ICE at the December 2, 2025 interview, demonstrates that the denial was pretextual.

As the Supreme Court held in *Department of Commerce v. New York*, 139 S. Ct. 2551 (2019), a court may set aside agency action as pretextual when the stated justification is a contrived post-hoc rationalization that does not reflect the agency's actual reasoning. *Id.* at 2573-76. The Court explained that the reasoned explanation requirement of administrative law is "meant to ensure that agencies offer genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public." *Id.* at 2575-76. "Accepting contrived reasons would defeat the purpose of the enterprise." *Id.*

The denial of Ms. Liu's I-485 application fails this standard. The denial acknowledges only two favorable factors: her three U.S. citizen children and her lack of contact with law enforcement. It makes no mention of her nearly thirty years of residence in the United States, her consistent tax payments, her community ties, or her role as mother and caretaker. This omission is not accidental. The interviewing officer never asked about these factors because the outcome was predetermined. The interview was designed to facilitate detention, and the denial was designed to moot this litigation.

### D. Petitioner's Detention Violates the Statutory Framework

The statutory framework governing detention after a removal order establishes distinct temporal periods with different detention authorities. As the Ninth Circuit explained in *Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011), the statute creates a 90-day "removal period" during which detention is mandatory under 8 U.S.C. § 1231(a)(2). After the removal period expires, any continued detention must be authorized under 8 U.S.C. § 1231(a)(6) and is subject to the constitutional constraints established in *Zadvydas v. Davis*, 533 U.S. 678 (2001).

Under 8 U.S.C. § 1231(a)(1)(B)(i), the 90-day removal period began when Ms. Liu's exclusion order became administratively final on November 3, 1995. That period expired on February 1, 1996. Once this period passed without removal, the statute provides that "the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3).

For nearly thirty years after the removal period expired, Ms. Liu was not detained. She lived openly in the community, raised three United States citizen children, paid taxes, maintained employment, and complied with all laws. The government did not seek to detain her or execute her removal during this period, effectively treating her as subject to the supervision regime of Section 1231(a)(3) rather than the mandatory detention regime of Section 1231(a)(2).

Because the 90-day removal period expired nearly thirty years ago, ICE cannot justify Ms. Liu's present detention under the mandatory detention authority of 8 U.S.C. § 1231(a)(2). That authority is tied exclusively to the 90-day removal period; once that period expires, mandatory detention authority lapses. *See Diouf*, 634 F.3d at 1086.

Any present detention of Ms. Liu must be justified, if at all, under 8 U.S.C. § 1231(a)(6), which permits discretionary detention "beyond the removal period" of certain aliens. However, Section 1231(a)(6) detention is subject to the constitutional constraints of *Zadvydas* and must be reasonably necessary to effectuate removal. The Ninth Circuit applies the *Zadvydas* standard by asking whether there is "no significant likelihood of removal in the reasonably foreseeable future." *See Lema v. INS*, 341 F.3d 853 (9th Cir. 2003). The thirty-year delay between the expiration of Ms. Liu's removal period and her present detention, combined with the decades during which she lived in the community without any attempt to detain or remove her, is powerful evidence that detention now is not "reasonably necessary" to effect removal.

Ms. Liu has no criminal history whatsoever. She poses no flight risk; she appeared voluntarily for her USCIS interview knowing she had an outstanding exclusion order. She poses no danger to the community. The government cannot point to any of the factors that typically justify discretionary detention under Section 1231(a)(6). Ms. Liu's current detention, which commenced on December 2, 2025, nearly thirty years after her 90-day removal period expired on February 1, 1996, violates

the statutory framework of 8 U.S.C. § 1231 and cannot be justified under either Section 1231(a)(2) or Section 1231(a)(6).

## POINT TWO: PETITIONER FACES IRREPARABLE INJURY IF REMOVED TO CHINA

Denying this emergency stay would irreparably harm Petitioner by stripping her of her right to appeal and permanently separating her from her family. Every day of unlawful detention constitutes irreparable injury to her fundamental liberty interests that cannot be adequately compensated through monetary damages. *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment, from government custody, detention, or other forms of physical restraint, lies at the heart of the liberty that [the Due Process] Clause protects").

First, removal would permanently extinguish Ms. Liu's right to seek adjustment of status. Physical presence in the United States is a prerequisite to adjustment under 8 U.S.C. § 1255. Once removed, Ms. Liu cannot seek adjustment. Unlike a denial that can be challenged or appealed, removal categorically eliminates any possibility of obtaining the benefit for which she is eligible.

Second, removal would permanently separate Ms. Liu from her three United States citizen children, ages 19, 20, and 21. These young adults have known no life without their mother. Angela Chen, who petitioned for her mother's adjustment, would be permanently separated from the parent she sought to sponsor for lawful status. This separation cannot be remedied by any subsequent legal proceeding.

Third, Ms. Liu would face serious hardship if returned to China. She left China as a minor in 1995 and has no remaining family or support network there. She would be returning to a country she has not seen in thirty years, without resources, support, or community. The harm is permanent and irreparable.

## POINT THREE : RESPONDENTS WILL NOT SUFFER HARM IF THE STAY IS GRANTED

Respondents face negligible harm if Petitioner is granted a stay during the pendency of this appeal. Ms. Liu is already detained. Continuing her detention for a brief period while this Court adjudicates her appeal imposes no additional burden on the government.

The government has no legitimate interest in removing an individual before she has had an opportunity to challenge an arbitrary

denial of her adjustment application. Ms. Liu poses no flight risk; she appeared voluntarily for her USCIS interview knowing she had an outstanding exclusion order. She poses no danger to the community; she has no criminal history whatsoever. If this Court ultimately dismisses the appeal, Respondent can execute the removal order without prejudice. The temporary delay in removal does not constitute substantial harm to the government's interests.

**POINT FOUR:**
**GRANTING THE STAY IS IN THE PUBLIC INTEREST**

Staying Petitioner's removal serves the public interest by ensuring meaningful appellate review before executing a potentially erroneous removal order. The public has a greater interest in ensuring that individuals are not wrongfully removed than in the immediate execution of removal orders.

The public has a profound interest in agency accountability. When USCIS schedules and conducts an interview but then facilitates an arrest rather than rendering a fair decision on the pending application, the agency has failed to perform its statutory function. Multiple courts have recognized this concern. As the court in *You* observed, when immigrants

who are eligible for legal status fear that engaging with USCIS could lead to detention or deportation, the integrity of the immigration system Congress created is fundamentally compromised. 321 F. Supp. 3d at 466.

The public also has an interest in preserving family unity. Ms. Liu's three United States citizen children would suffer direct harm from their mother's removal. The public interest in family unity and in ensuring that citizens do not lose their parents to deportation weighs heavily in favor of granting this stay.

If Petitioner ultimately prevails, the stay will have prevented unnecessary removal and saved government resources. The public's confidence in the immigration system depends on thorough review of life-altering decisions.

## CONCLUSION

For all these reasons, Petitioner should not be removed from the United States until this Court has the opportunity to review the District Court's decision. The balance of factors overwhelmingly supports granting an emergency stay of removal.

WHEREFORE, Petitioner-Appellant respectfully requests that this Court immediately grant an emergency stay of removal pending resolution of her appeal.

Dated: January 16, 2026
New York, New York

Respectfully submitted,

Joshua E. Bardavid, Esq.
Law Office of Joshua E.
Bardavid, P.C.
277 Broadway, Suite 1501
New York, New York 10007
(212) 219-3244
josh@bardavidlaw.com

*Counsel for Petitioner-Appellant*

## CERTIFICATE OF SERVICE

I, Joshua E. Bardavid, an attorney duly admitted in the State of New York and the United States Court of Appeals for the Ninth Circuit, hereby affirm under penalty of perjury that on January 16, 2026, I served a true and correct copy of this Emergency Motion for Stay of Removal and all attachments on Respondents-Appellees via this Court's CM/ECF system.

Dated: January 16, 2026
New York, New York

Joshua E. Bardavid, Esq.